(Judge Winch of Eighth Circuit Sitting in Place of Judge Donahue.)

CITIZEN'S BANK OF CARDINGTON v. DAVID HIGH.

**Representations that Bank Is Backing Purchaser Not Representation of Agency.**

Representation by a dealer that a certain bank is backing him in the purchase of hay is not equivalent to a representation that he is purchasing for the bank, and one who has sold him hay and taken his check in payment, can not upon the dishonor of the check, hold the bank as principal, merely because the dealer, when he shipped the hay, stated in the bill of lading that it was to the order of the bank and drew upon the consignee of the hay to the order of the bank for the purpose of securing his account with it.

## WINCH, J.

David High brought this action against the Citizen's Bank of Cardington, a corporation under the banking laws of Ohio, alleging that the bank was indebted to him in the sum of $117.17 for hay sold and delivered to it. The answer was a general denial.

Verdict and judgment being for the plaintiff below, the bank has filed its petition in error, urging that the judgment is against the law and the evidence of the case.

It appears from the bill of exceptions that in June, 1898, one John H. Pringle bought the hay in controversy from David High, who says that Pringle represented to him that he was backed in the hay business by the Citizen's Bank.

High says that Pringle virtually represented himself as an agent for the bank in the purchase of the hay, but Pringle denies this. The hay was delivered by High to Pringle at Ashley, Ohio, and put aboard the cars there for shipment to Cincinnati. Pringle gave High his check on the Citizen's Bank, but it was never paid. High says the cashier of the bank afterwards practically told him that the bank had bought the hay, but the cashier denies this.

Citizens' Bank v. High.

It appears that the railroad company, upon receiving the hay, delivered to Pringle its bill of lading, reciting among other things:

"Ashley, Ohio, June 17, 1898. Received from J. H. Pringle by the Cleveland, Cincinnati, Chicago & St. Louis Ry. Co." And the property is described below under "Description of Articles: one car baled hay, 20,000 lbs. Car, C. C. C. & St. L. 93, 117. Notify the Union Grain and Hay Co., Cincinnati, Ohio. Order, Citizen's Bank, Cardington, Ohio."

Pringle took the bill of lading and attached to it his draft as follows:

"Cardington, Ohio, June 17, 1901. At sight. Pay to the order of the Citizen's Bank, seventy-five dollars. Value received and charge to account of J. H. Pringle. To Union Grain and Hay Co., Cincinnati, Ohio."

There were several bills of lading and several drafts, but all are alike. Pringle delivered the bill of lading with the draft attached to the bank, which credited the amount of the draft to Pringle, with the understanding that his account was not to be checked against until the draft was paid.

The draft with bill of lading attached was sent by the bank for collection to its correspondent at Cincinnati, but the same was not paid. This is the reason the bank assigns for not paying Pringle's check to High.

To us this transaction, so far as the bank is concerned, appears to be a straight banking matter. It does not appear that the bank was buying and selling hay.

This delivery to it of the bill of lading did not amount to a constructive delivery to it of a consignment of hay. The bill of lading was attached to the draft as a direction and authority to the consignee of the hay at Cincinnati to pay the bank; and notice to the consignee that it should pay no one else but the bank. The words, "Order Citizen's Bank, Cardington, Ohio," directed the railroad company to respect any orders of the bank concerning the hay; and this because the bank was backing Pringle in business and desired to be sure of his honesty and fair dealing.

But backing another man in his business does not mean constituting him your agent for business that you are carrying on

for yourself. To give this construction to the bank's part in the transaction is to harmonize it with its powers as a bank and the common transaction of banks with drafts.

We do not think that the case of *Hamet* v. *Letcher*, 37 Ohio St. 356 [41 Am. Rep. 519], furnishes any rule to be followed in this case.

In the Hamet case one Jacob O. Rhoner, representing himself as agent of O. T. Letcher & Co., buyers and shippers of hogs, bought hogs of Hamet, a farmer, and took the hogs to Letcher & Co., and sold them to said firm as his own and got the money for them. When Hamet applied to the firm for his pay he was told that they had paid Rhoner.

The farmer knew that Letcher & Co. were in the hog business and that is what distinguishes that case from this.

In the case High knew that an incorporated bank can not buy and sell hay. It is *ultra vires* for it to do so and he had no right to rely upon any statements Pringle may have made him, that he was agent for the bank.

Again, after the transaction, he had no rights against the bank growing out of any representations its cashier might have made to him as to the bank's being in the hay business. Any such representations, if they were made by the cashier, would not bind the bank. An agent of a corporation can not bind it to contracts beyond the powers of the corporation to make. Corporations act through their boards of directors; and no officer can bind a bank on a hay contract, such contract being clearly beyond the powers of the bank to enter into, as High knew, or should have known, before he sold the hay to Pringle. We find the judgment is against the law and evidence, and it is therefore reversed.

**Voorhees** and **McCarthy, JJ.,** concur.